IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CHARLES J. BRYANT,

                          Plaintiff,          Civil Action No.
                                              9:16-CV-0155 (GTS/DEP)

          v.

MICHAEL POOLE and JOHN
McWATERS,

                    Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

CHARLES BRYANT, *Pro Se*
15-R-1904
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR DEFENDANTS:

HON. DANIEL C. LYNCH            MICHAEL L. GOLDSTIEN, ESQ.
Albany County Attorney          Assistant Albany County Attorney
112 State Street
Albany, NY 12207


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Charles J. Bryant, a former Albany County Correctional Facility ("ACCF") inmate, has commenced this civil rights action pursuant 42 U.S.C. § 1983 against two individuals employed at the ACCF. In his complaint, plaintiff alleges that on June 4, 2015, while he was a pre-trial detainee, defendants assaulted him in violation of his Fourteenth Amendment rights.

Currently pending before the court is a motion brought by defendants seeking the entry of summary judgment based on plaintiff's failure to exhaust the available administrative remedies prior to bringing this action, as required by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). For the reasons set forth below, I recommend that defendants' motion be granted.

I.    <u>BACKGROUND</u>[1]

At the times relevant to the claims in this action, plaintiff was confined as a pre-trial detainee in the ACCF located in Albany, New York. Dkt. No. 1 at 4. Plaintiff alleges that on June 4, 2015, he entered his housing unit, 1 East, after returning a food cart to the kitchen. *Id.*; Dkt. No.

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

37-10 at 21. As he entered the unit, defendant John McWaters, a

corrections officer stationed at the facility, asked plaintiff if he was "all set."

Dkt. No. 1 at 4. Plaintiff responded that he had to serve coffee. *Id.*

Defendant McWaters then directed plaintiff to "lock back on the gallery."

*Id.* Plaintiff alleges that while he was in the sally port, defendant McWaters

uttered racial slurs towards him and then threatened to "piss in the . . .

coffee." *Id.* at 5; *see also* Dkt. No. 37-10 at 21.

Plaintiff alleges that when the coffee arrived, defendant McWaters

told the runner from the left side of the housing unit to serve it. Dkt. No. 1.

at 5; Dkt. No. 37-10 at 21. Plaintiff informed the runner that the inmates on

his side did not want coffee. Dkt. No. 1 at 5. Defendant McWaters told

plaintiff to "lock in" his cell, and plaintiff responded by telling defendant

McWaters that he did not "have time for his aryan bullshit." *Id.*; Dkt. No.

37-10 at 21-22. According to plaintiff, this statement "caught the attention"

of other inmates, at which point defendant McWaters ordered all inmates

to "lock in their cells." Dkt. No. 1 at 5; Dkt. No. 37-10 at 22.

Plaintiff and four other inmates remained on the gallery and refused

to "lock in" until a sergeant arrived. Dkt. No. 1 at 5; Dkt. No. 37-10 at 22.

When the sergeant arrived, plaintiff discussed the problem with her and

then locked in his cell. *Id.* An hour later, defendant McWaters escorted

plaintiff to Gallery 3 West. Dkt. No. 1 at 5; Dkt. No. 37-10 at 28. Plaintiff

alleges that during the transit, defendant McWaters took a knife from his

belt and ripped plaintiff's sheet open, which contained his belongings,

forcing plaintiff to re-pack them. Dkt. No. 1 at 5; Dkt. No. 37-10 at 29-31.

When plaintiff arrived at Gallery 3 West, defendants McWaters and

Poole, as well as "other unidentified officers," escorted Bryant to cell 20.

Dkt. No. 1 at 6. Along the way, defendant McWaters ordered plaintiff to

remove his hair tie. *Id.*; Dkt. No. 37-10 at 32-34. Plaintiff complied with the

directive by removing his hair tie and dropping it on the ground. Dkt. No. 1

at 6; Dkt. No. 37-10 at 33-35. Defendant McWaters instructed plaintiff to

pick up the hair tie off of the floor, and as plaintiff was complying,

defendant Michael Poole, a corrections sergeant, "rushed" plaintiff and

tried to punch him in the face. Dkt. No. 1 at 6; Dkt. No. 37-10 at 33, 35-36.

Plaintiff "quickly stood up to avoid [his] head being knocked against

the bars & put [his] hands in the air." Dkt. No. 1 at 6; *see also* Dkt. No. 37-

10 at 33, 35-36. Plaintiff alleges that defendant McWaters grabbed him

from behind, slammed him to the floor, and pepper-sprayed his mouth,

face, and hair. *Id.* Plaintiff further alleges that defendant McWaters

continued to punch and kick him in his head "multiple times" and that other

unidentified officers "joined the assault." Dkt. No. 1 at 6; Dkt. No. 37-10 at

33, 36.

Plaintiff alleges that during the encounter defendant McWaters "clamped" his nose shut, grabbed his jaw, and threatened to kill him. Dkt. No. 1 at 6. Plaintiff also alleges that defendant Poole held his hands behind his back throughout the assault. *Id.* at 7.

After the initial assault, plaintiff was handcuffed and escorted to the infirmary through a back entrance. Dkt. No. 1 at 7. He was then pushed into a chair in a shower stall, punched in the back of the head, and kicked in the shoulder. *Id.*; Dkt. No. 37-10 at 40. Plaintiff was treated by a nurse at the facility and x-rays were taken of his face and jaw, which were unremarkable. Dkt. No. 1 at 7; Dkt. No. 37-10 at 43-44; Dkt. No. 37-13 at 11. Plaintiff was then transferred to a special housing unit ("SHU") cell. Dkt. No. 1 at 7; Dkt. No. 37-10 at 44. Plaintiff contends that he experienced "flashes" in his left eye and a dull ringing in his ears as a result of the attack. Dkt. No. 1 at 7.

Plaintiff reported the incident to his mother through a letter addressed to her. Dkt. No. 1 at 7; Dkt. No. 37-10 at 46. While plaintiff was still confined in the ACCF SHU, an unidentified corrections captain came to his cell to inquire about the incident. Dkt. No. 1 at 7; Dkt. No. 37-10 at 47-48. According to plaintiff, the captain wrote an incident report, which

plaintiff signed, but thereafter he never received a response or learned of the outcome. Dkt. No. 1 at 7; Dkt. No. 37-10 at 50.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on February 11, 2017, by filing a complaint, accompanied by an application to proceed in the action *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Plaintiff's complaint names Sergeant Michael Poole and Corrections Officer John McWaters as defendants and asserts Fourteenth Amendment equal protection and excessive force causes of action against both of them.[2] Dkt. No. 1 at 1-2, 6.

On April 11, 2016, Chief District Judge Glenn T. Suddaby issued a decision and order pursuant to 28 U.S.C. §§ 1915(e), 1915(A), granting plaintiff's IFP application and dismissing plaintiff's claims asserted against defendants for monetary damages in their official capacities and plaintiff's Fourteenth Amendment equal protection claim. Dkt. No. 11 at 13.

Following the close of discovery, defendants filed the currently pending motion for summary judgment pursuant to Rule 56(a) of the

---

[2]    Plaintiff's complaint originally named a "John Doe (badge # 175)" as a defendant. Dkt. No. at 1. Through the course of discovery, defendant Doe's identity was discovered, and the court substituted defendant McWaters for the Doe defendant on September 14, 2016. Dkt. No. 31.

Federal Rules of Civil Procedure. Dkt. No. 37. In their motion, defendants argue that plaintiff's complaint should be dismissed because he failed to exhaust the available administrative remedies as required by the PLRA prior to commencing suit. *See generally* Dkt. No. 37-2. Plaintiff has responded in opposition to defendants' motion but generally does not address defendants' exhaustion defense. Dkt. No. 41-1.

Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this

inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d

8

Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

    B.    <u>Exhaustion of Available Administrative Remedies</u>

Following Judge Suddaby's initial order reviewing plaintiff's complaint, the only cause of action that remains pending is plaintiff's Fourteenth Amendment excessive force claim asserted against defendants Poole and McWaters. Dkt. No. 11 at 10. Defendants contend that, because plaintiff failed to exhaust the available administrative remedies with respect to that cause of action prior to filing suit, plaintiff's complaint should be dismissed. Dkt. No. 37-2 at 4-10.

    1.    <u>Legal Standard Governing Exhaustion of Available Administrative Remedies</u>

The PLRA imposes several restrictions on the ability of prisoners to maintain federal civil rights actions and expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The exhaustion requirement of section 1997e(a) is mandatory and applies to all inmate lawsuits regarding

the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord*, *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

Inmates housed in the ACCF are issued an inmate rule book that provides the instructions for "resolving problems and filing grievances." Dkt. No. 37-11 at 25. Plaintiff was given a copy of the rule book when he first arrived at the ACCF Dkt. No. 37-10 at 46. According to the procedures set forth in that rule book, inmates must undertake four separate steps to resolve any issues or problems they encounter at the facility. Dkt. No. 37-11 at 25. First, the inmate is required to address his problem or issue with the tier officer assigned to his housing unit. *Id.* Second, if the inmate and

10

tier officer are unable to reach a resolution, then the inmate must request a grievance form from the unit supervisor. *Id.* The instructions are explicit that the grievance form is to be completed within five days of the alleged act forming the basis for the grievance. *Id.* Third, if the inmate is dissatisfied with the initial decision of the Grievance Coordinator, then the inmate may appeal that decision to the Chief Administration Officer of the facility within two days. *Id.* Lastly, if the appeal has been denied at the facility level, the inmate may appeal the findings to the New York State Commission of Correction. *Id.* Generally, if a plaintiff fails to follow each of the required steps of the above-described inmate grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must

first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at

1858 ("[T]he exhaustion requirement hinges on the availability of

administrative remedies." (quotation marks omitted)). In the PLRA context,

the Supreme Court has determined that "availability" means that "an

inmate is required to exhaust those, but only those, grievance procedures

that are capable of use to obtain some relief for the action complained of."

*Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which

a court could find that internal administrative remedies are not available to

prisoners under the PLRA. *Ross*, 136 S. Ct. at 1859-60. Under the first,

"an administrative procedure is unavailable when (despite what

regulations or guidance materials may promise) it operates as a simple

dead end – with officers unable or consistently unwilling to provide any

relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative

scheme might be so opaque that it becomes, practically speaking,

incapable of use." *Id.* The Court explained that, "[i]n this situation, some

mechanism exists to provide relief, but no ordinary prisoner can discern or

navigate it." *Id.* The third scenario in which administrative remedies are

deemed unavailable to prisoners is when "prison administrators thwart

inmates from taking advantage of a grievance process through

12

machination, misrepresentation, or intimidation." *Id.* at 1860.

2.    Analysis

In this case, plaintiff admitted at his deposition that he did not request a formal grievance form or file a grievance while confined in the ACCF. Dkt. No. 37-10 at 50, 53. Plaintiff also testified that he did not file a grievance regarding the incident while confined in any other prison facility after being transferred out of the ACCF. *Id.* at 53. According to plaintiff, although he filed an incident report with an unnamed captain while he was confined in the SHU at the ACCF, he did not receive a copy of that report or any response to that report. *Id.* at 46, 52. On January 27, 2016, approximately eight months after the incident, while plaintiff was confined in the Franklin Correctional Facility, a state prison, plaintiff sent a letter to the ACCF grievance office to inquire about the status of the incident report. Dkt. No. 37-10 at 53; Dkt. No. 37-14 at 2. Plaintiff, however, never received a response from the ACCF grievance office. *Id.* at 54. There is no evidence in the record that plaintiff appealed any of the non-responses to his letters or incident reports to the Chief Administration Officer or New York State Commission of Correction, as provided in the ACCF rule book. Dkt. No. 37-11 at 25. Accordingly, the record unequivocally reflects that plaintiff did not file a grievance regarding the alleged assault by

defendants Poole and McWaters in accordance with the available procedures at the ACCF.

That plaintiff failed to exhaust the ACCF's grievance procedures does not end the court's inquiry because, as discussed above, an inmate need only exhaust the grievance procedures that are available to him. 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858. In this case, however, no reasonable factfinder could conclude that the ACCF grievance procedures were unavailable to plaintiff. Plaintiff testified at his deposition that he received the ACCF rule book containing the grievance procedures upon arriving at the facility. Dkt. No. 37-10 at 46. Although plaintiff testified at his deposition that he "read[s] all the rule books," he also confusingly alleged that he did not read the grievance procedures contained within the rule book. *Id.* at 46-47; *see also* Dkt. No. 41 at 13 (plaintiff admitting that he "did not read the grievance procedure in the rulebook, therefore [he] wasn't familiar with the procedure").

It appears that plaintiff's only defense for his failure to exhaust is that this is his first lawsuit and he is acting *pro se*, suggesting that he should be excused from the exhaustion requirement on that basis. Dkt. No. 41 at 14. Under *Ross*, however, only when the administrative procedures are unavailable to an inmate may he be excused from exhaustion under the

14

PLRA. Because plaintiff has failed to offer any proof of unavailability, I recommend that his complaint be dismissed. *Ross*, 136 S. Ct. at 1858.

IV.     SUMMARY AND RECOMMENDATION

Defendants have moved to dismiss plaintiff's complaint in light of plaintiff's failure to exhaust the available administrative remedies prior to commencing suit. The undisputed record evidence reflects that plaintiff did not file a grievance in accordance with the prison procedures at the ACCF before commencing this action, and there is no evidence upon which a reasonable factfinder could conclude that the prescribed grievance procedures were unavailable to him.

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 37) be GRANTED and that plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[3] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[3]     If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    July 28, 2017
          Syracuse, New York

---

legal holiday. Fed. R. Civ. P. 6(a)(1)(C).